IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAMAR WILLIAMS,

    *Plaintiff*,

    v.

PAUL MAYHEW, *et al.*

    *Defendants*.

Civil Action No. ELH-18-3545

**MEMORANDUM OPINION**

Lamar Williams, the self-represented plaintiff, has filed a suit against a host of defendants. They are Paul Mayhew, Suzanne Berger, Michael Field, Andrew Maggio, Jennifer Frankovich, Kevin Kamenetz,[1] Lawrence Stahl, James Beach, III, and the Baltimore County Council. ECF 1 (the "Complaint"). The suit appears to relate to the termination of his employment. ECF 1 at 11; *see also* ECF 8 at 7-12.

The suit is founded on 42 U.S.C. § 1983. ECF 1 at 3. Williams alleges violations of "Title VII of the Civil Rights Act of 1964, Section 1 of the 14th Amendment, the Civil Rights Act of 1871, 42 U.S. Code 1985 & 42 U.S. Code Section 1981 & 1981(a)." *Id.*

Plaintiff subsequently filed an "Amended Statement of Claims." ECF 8 (the "Amended Complaint"). Among other things, he moved to add Terrence Sheridan as a defendant. ECF 8-2 (the "Motion to Join Sheridan"). In particular, Williams complains that the defendants "decided to ignore the mandate of the Americans with Disabilities Act and retaliated against [him] immediately after [he] engaged in protected activity and while [he] was engaged in protected

---

[1] Kevin Kamenetz, the former Baltimore County Executive, died unexpectedly on May 10, 2018.

activity." *Id.* at 5.  He seeks "back pay" and "noneconomic damages not to exceed $300,000," as well as front pay and punitive damages in the amount of "$1,400 x $10^6$."[2] ECF 8 at 16.[3]

With the exception of Maggio, the defendants who were served answered the suit.  ECF 9. And, on March 11, 2019, the Court issued a Scheduling Order.  ECF 10.

Maggio filed a motion to dismiss the suit (ECF 20), supported by a memorandum (ECF 20-1) (collectively, the "Motion to Dismiss").  He also filed a motion for summary judgment (ECF 38) supported by a memorandum (ECF 38-1) (the "Summary Judgment Motion") and exhibits. Williams was advised of his right to respond to the motions.  ECF 21; ECF 41.  In response, Williams filed a motion to strike Maggio's Summary Judgment Motion.  ECF 44 (the "Motion to Strike," with exhibits).  Maggio responded in opposition.  ECF 51.  Williams replied.  ECF 53.

The defendants, again with the exception of Maggio, filed a motion to expedite a settlement conference.  ECF 45.  Four days later, the defendants filed a motion to withdraw that motion.  ECF 46 (the "Motion to Withdraw").

Williams has filed numerous motions, including the following:  "Rule 26(c)(1) and Rule 32(a)(5)(B) Motion for a Protective Order,"  ECF 11 (the "Motion for Protective Order"); "Rule 16(b)(4) Motion to Modify the Scheduling Order," ECF 12 (the "Motion to Modify Scheduling Order"); "Motion for Joinder" of "Maryland Departement  [sic] of Human Services ["DHS"] and Seventy Time Seven/Elysian Fields," ECF 18 (the "Motion to Join DHS"); "Motion to Strike ECF 18," ECF 19 (the "Motion to Strike ECF 18"); "Rule 37 Motion to Compel Discovery, and Request for Hearing," ECF 23 (the "Motion to Compel"); "Motion for Rule 20 Permissive Joinder of Dunbar Armored, Inc. ["Dunbar"],"  ECF 26 (the "Motion to Join Dunbar");  "Motion for Exigent

---

[2] Williams calculates damages using exponents.

[3] The Clerk added Sheridan's name to the docket at a defendant.

Rule 8(a) Temporary Relief and Request for Hearing/Telephone Conference," ECF 34 (the "Rule 8(a) Motion"); "Motion for Sanctions," ECF 48; "Rule 20 Permissive Joinder of United States of Amerikka et al.," ECF 52 (the "Motion to Join Amerikka"); "Rule 64 Motion for Seizure of Property," ECF 54 (the "Rule 64 Motion"); "Motion for Rule 20 Permissive Joinder of Julie Guilbault," (ECF 55), as amended, ECF 56 (the "Motion to Join Guilbault"). Maggio opposes the Motion to Join Dunbar. ECF 32.

The court takes judicial notice of the fact that this case is one of several related matters that Williams has filed in the District of Maryland.[4] For example, he filed a related case under 42 U.S.C. § 1983 against Vincent Gardina, James Markle, Jr., David Lykens, Frederick Homan, and George Gay, all of whom are mentioned in the case sub judice. *See Williams v. Gardina et al.*, ELH-18-3623. The case of *Williams v. Baltimore County Government*, GLR-17-cv-0066, previously assigned to Chief Judge James Bredar and now assigned to Judge George Russell, III, also involves claims against Gardina and the Baltimore County government. And, the allegations in that case appear similar to those in this case. Further, in the case of *Williams v. Hanlon et al.*, RDB-19-cv-550, plaintiff sued a host of defendants, including Chief Judge Bredar; Robert Hur, the U.S. Attorney for the District of Maryland; then-Magistrate Judge Stephanie Gallagher; Magistrate Judge Mark Coulson; Assistant United States Attorney Michael Hanlon; and many

---

[4] A court may take judicial notice of matters of public record that constitute adjudicative facts. Fed. R. Evid. 201(b) (stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see Goldfarb v. Mayor and City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records").

others. Williams's claims in that case were dismissed by Judge Richard Bennett (ECF 15; ECF 16) and his appeal to the Fourth Circuit was dismissed for failure to prosecute. ECF 23.[5]

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion to Join Sheridan (ECF 8-2) and the Motion to Strike ECF 18 (ECF 19). I shall also grant the Motion to Withdraw (ECF 46). And, I shall also grant the Motion to Dismiss (ECF 20) and the Motion for Summary Judgment (ECF 38). I shall deny the remaining motions.

## I.      Factual and Procedural History[6]

Plaintiff filed suit on November 21, 2018. ECF 1. On February 28, 2019, he filed a "Rule 15(a)(1)(A) Amended Statement of Claims and Demand for Jury Trial." ECF 8. The Amended Complaint alleges that the defendants "discriminated against [Williams] as a disabled African American Man over the age of 40, effectively discriminating against him because of the combination of his race, age and disability." *Id.* at 2. Although not clearly stated in the suit, it appears that Williams was employed by Baltimore County as an engineer in the Department of Environmental Protection and Sustainability ("DEPS"). *See* ECF 34, ¶ 5. He claims that he was involuntarily transferred to the Department of Public Works ("DPW"). *See, e.g.*, ECF 8, ¶ 54. He also complains that he was later terminated from employment. *Id.* at 16.

According to Williams, "the defendant" entered into a consent decree in August 2012 with the United States Department of Justice due to discrimination against applicants and employees with disabilities. *Id.* ¶ 23. Williams alleges that in February 2014, during a performance review,

---

[5] Williams was also charged with criminal contempt, in violation of 18 U.S.C. § 401. That case was assigned to Judge Theodore Chuang. *See United States v. Williams*, TDC-18-413. Williams was convicted and sentenced to 47 days confinement. *Id.*, ECF 107.

[6] In recounting the factual and procedural history, I rely on plaintiff's allegations.

he informed his supervisor, James Markle, that he "needed to be tested for a cognitive disability." *Id.* ¶ 24. Further, plaintiff alleges that in August 2014, he met with "Dr. Breuer" to begin this testing. *Id.* ¶ 25. On his third or fourth day of testing, plaintiff informed Markle that he was being tested and would report the results. *Id.* ¶ 27. In December 2014, he had another performance review. *Id.*

On May 12, 2015, plaintiff received a written reprimand from Markle. ECF 8, ¶ 29. This reprimand, according to plaintiff, was given to him "without the involvement of the ADA coordinator with the human resources department despite [Markle's] full knowledge that [plaintiff] had informed him about [his] ADHD, Anxiety Disorder and [his] PTSD." *Id.* Williams contends that Markle, not a defendant here, allegedly committed perjury by failing to admit that plaintiff discussed his cognitive testing with him. *Id.* ¶ 20.

Further, Williams claims that on June 1, 2015, Gardina, a defendant in the related case, "sent out an 'agency warning' that targeted [Williams] directly instead of properly engaging [him] in a flexible interactive dialogue. . ." *Id.* ¶ 30. According to Williams, Gardina's actions violated the August 2012 consent decree. *Id.* Plaintiff contends that Gardina attempted to terminate his employment. *Id.* ¶ 11.

Plaintiff also states that on October 21, 2015, he was involuntarily transferred to another department. *Id.* ¶ 31. He alleges that he was advised by a union representative the following day "to file a grievance with Human Resources given it was an involuntary transfer in violation of the Memorandum of Understanding between the employee's union and Baltimore County Government." *Id.* ¶ 32. But, that same day the union president allegedly told Williams that he could not help him with the issue, and that Williams could not join the union. *Id.* ¶ 33.

Williams claims that on October 23, 2015, he found a memorandum of October 16, 2015, from Markle on the desk of David Lykens, and the memorandum falsely stated that Williams had not improved since his May 2015 reprimand. *Id.* Lykens is a defendant in a related case. Williams claims that at that point, the 2012 consent decree had expired. *Id.* He alleges that the "Office of Law, the Office of Human Resources, the Office of the Executive and DEPS decided to violate the ADA given the consent decree had expired and there would be no immediate judicial oversight." ECF 8, ¶ 35.

Plaintiff was placed on administrative leave on October 27, 2015, by George Gay, a defendant in a related case. *Id.* ¶ 36. According to plaintiff, Gay violated the ADA in a variety of ways, including by not engaging him in a flexible interactive process. *Id.* ¶ 10. Plaintiff came back to work on October 29, 2015, but was told he could not work. *Id.* ¶ 38. That afternoon, Gardina emailed Williams, informing him that he had been transferred to "DPW or DPR" and that he should move his belongings "to the ALMS house." *Id.* ¶ 39. Plaintiff also alleges that on that day Suzanne Berger replied to one of his emails, but ignored one informing her that Williams "would be engaging in protected activity and had obtain [sic] legal representation." *Id.* ¶ 40.

Subsequently, Markle emailed Williams to remind him to renew his insurance. *Id.* ¶ 41. Williams took this to mean he "was not terminated or would be penalized for contesting an involuntary transfer." *Id.* On November 6, 2015, Gardina sent an email to an unidentified individual, asking if there was a way to terminate Williams in response to a formal request for accommodations. *Id.* ¶ 42.

On November 23, 2015, Gardina demanded to meet with Williams and refused to allow him to reschedule so his attorney and the County attorney, Michael Field, could be present. *Id.* ¶ 43. Williams does not provide allegations of what was said in the meeting. But, he asserts that

Gardina, Mayhew, Berger, and "no less than 9 other Baltimore County Agents violated the ADA and substantiated the illegal actions of the ADA on November 23, 2015, when the defendant(s) retaliated, intimidated, discriminated, coerced, threatened, and subjected [Williams] to numerous other adverse employment actions and failed to engage [him] in flexible interactive dialogue while [he] was covered under the ADA and therefore engaged in protected activity." *Id.* ¶ 45.

Plaintiff left his computer and phone with Human Resources on November 24, 2015. ECF 8, ¶ 47. That day, he "noticed a black male Dunbar Security Guard carrying a loaded weapon." *Id.* ¶48. Williams contends that Fred Homan, the County Administrative Officer, had instructed the guard to "kill the plaintiff 'at will' if the plaintiff became hostile, aggressive or if the plaintiff appeared to be under the influence of any illegal narcotics such as cocaine or marijuana." *Id.*

Williams met with the EEOC on December 3, 2015, but decided not to file a complaint out of fear of further retaliation. *Id.* ¶ 49. The following day, Williams claims to have seen Field, who is white, and a white woman watching him while at the Office of Human Resources. *Id.* ¶ 50. Plaintiff attended a second meeting, which he characterizes as "not flexible or interactive considering an armed guard was standing by the door with his gun drawn and specific instructions from Fred Homan to kill [Williams] 'at will' & Suzanne Berger had a loaded weapon under the table. . . ." *Id.* ¶ 51. Williams alleges: "[D]efendant demanded that I wave all rights afforded to me under the ADA in order to transfer to the Department of Public Works." *Id.* However, it was a "'phantom' position," *id.* ¶ 52, and plaintiff had no access to the office. *Id.* ¶ 51. Berger acknowledged via email on December 11, 2015, that plaintiff was being transferred. *Id.* ¶ 52.

On December 14, 2015, Williams filed a complaint with the EEOC. *Id.* ¶ 53. Plaintiff alleges that on December 16, 2015, he "received a letter that demanded that [he] sign a waiver [of] any rights afforded to [him] under the ADA." *Id.* ¶ 54. Plaintiff does not identify who sent the

letter, but complains that the letter contained no details about his transfer position, such as his start date, supervisor, and pay. *Id.* And, he appears to complain that the new position was a more physically onerous one, and that the objective was to "subject [him] to more onerous working conditions and. . . force [him] to quit or go on disability. . . ." *Id.* He also alleges that this letter was sent in order to "thwart the complaint [he] made to the EEOC on December 14, 2015." ECF 8, ¶ 55.

According to Williams, over the next thirty months, defendants raised a defense of collateral estoppel based on their internal proceedings in the course of an action in the Circuit Court for Baltimore County. *Id.* ¶ 56. He alleges that this was done in order to prevent him from filing suit in federal court. *Id.* He also alleges that Lawrence Stahl, "who donated money to Kevin Kamenetz's campaign [for governor] and was rewarded as an Administrative Law Judge," upheld his termination, despite knowledge that Williams was subjected to discrimination. *Id.* ¶ 57.

Williams also contends that the Personnel and Salary Advisory Board ("PSAB") does not have jurisdiction to determine whether defendants violated the ADA, and it is also unconstitutional. *Id.* ¶ 58. He claims that the "Office of Law, the Office of Human Resources, the Office of the Executive and DEPS violated the ADA when they failed to at least engage [him] in a flexible interactive dialogue without subjecting [him] to any adverse employment actions." *Id.* ¶ 58.

According to plaintiff, he has sued the defendants "in their 'individual capacity' and/or their 'official capacity.'" *Id.* at 1. Plaintiff also includes a section titled "Specific Violations of Each Defendant." *Id.* at 5. Among other things, he alleges that Field ignored attempts to settle Williams's Complaint. *Id.* ¶ 14. Kamenetz, Williams alleges, "directly attempted to intimidate" him. *Id.* ¶ 8. Homan allegedly instructed "everyone" to "violate the ADA while [Williams] was

covered under the ADA." *Id.* ¶ 9. Berger subjected plaintiff to adverse employment actions, and "had a loaded gun underneath the table" during a meeting with Williams. *Id.* ¶ 12. Stahl allegedly asserted that an unspecified defendant "had not violated the ADA and upheld the plaintiff's unlawful termination while the plaintiff was and is engaged in protected activity." *Id.* ¶ 13. Mayhew allegedly "submitted false information in 'bad faith' to this and other Courts" and advised Gardina to violate Williams's civil rights. ECF 8, ¶ 15. Jennifer Frankovich allegedly "submitted false information to the Administrative Law Judge Lawrence Stahl." *Id.* ¶ 16. Terrence Sheridan "rigged the PSAB so there would only be 3 members present instead of 5 members present." *Id.* ¶ 17. He also allegedly "ordered his officers to threaten the plaintiff with bodily harm on July 19, 2016, various other days and most recently on July 5, 2018." *Id.* ¶ 17. James Beach upheld Williams's unlawful termination. *Id.* ¶ 18.[7] Lykens allegedly allowed Gardina to violate the ADA. *Id.* ¶ 19. Maggio, along with other employees of the Dunbar Security Company, allegedly threatened Williams. *Id.* ¶ 21.

## II.    Legal Standard

### A.  Motion to Dismiss; Rule 12(b)(6)

As noted, Maggio has moved to dismiss. A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a

---

[7] Williams does not provide Beach's position.

plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of

relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long*

*Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting Forst, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents expressly incorporated by reference into the complaint. *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the

document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also consider documents submitted by the movant, even if they were not attached to or expressly incorporated in a complaint. However, the document must be "integral to the complaint" and there can be "no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Because Williams is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank*, *N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."); *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

## B.  Summary Judgment; Rule 56

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *accord Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black &*

*Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

## C. Section 1983 Generally

Plaintiff's suit is predicated on 42 U.S.C. § 1983. Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1893 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245. To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180); *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

### III.    Discussion

### A. Maggio's Motions

### 1.

Maggio moves to dismiss under Rule 12(b)(6), claiming that Williams has failed to state a claim as to him.

Maggio observes that the Amended Complaint "lists a series of statutes, almost all of which have no connection to this lawsuit. . ." *Id.* at 5. The gravamen of Williams's suit, according to Maggio, arises from his alleged employment discrimination. *Id.* at 6. Maggio contends that the Amended Complaint contains no facts as to Maggio that support a claim against him for employment discrimination or retaliation. *Id.* at 4. Further, he asserts that the suit contains no allegations that Maggio is a state actor. *Id.* Maggio also argues that Williams's claims are barred by the applicable three-year statute of limitations. *Id.* at 7; *see* Md. Code (2013 Repl. Vol., 2019 Supp.), Cts. & Jud. Proc. § 5-101. And, he contends that Williams has not alleged "sufficient facts

to establish that Mr. Maggio harbored an evil motive, intent to injure, or ill will against him" and thus has not met the pleading standard for punitive damages. *Id.* at 8.

Plaintiff alleges that Maggio works for Dunbar, not Williams's former employer. Therefore, there is no basis for any employment-related claim against Maggio. Instead, in a generous reading of the suit, I shall focus on the § 1983 claims concerning the alleged misconduct by various security guards.

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citations omitted). *See also*, *e.g.*, *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995) ("The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual."). Nevertheless, a private party may be "considered a state actor for purposes of § 1983 if 'the deprivation [is] caused by the exercise of some right or privilege created by the State ... [and] the party charged with the deprivation [is] a person who may fairly be said to be a state actor.'" *Gregg v. Ham*, 678 F.3d 333, 339 n. 3 (4th Cir. 2012) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); modifications in *Gregg*).

Regarding the distinction between private and state action, the Fourth Circuit explained in *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (footnote omitted), *cert. denied*, 540 U.S. 822 (2003):

> If the substance of § 1983 is not to be substantially eviscerated, ... "its ambit cannot be a simple line between States and people operating outside formally governmental organizations." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295[ ] (2001). Section 1983 therefore includes within its scope apparently private actions which have a "sufficiently close nexus" with the State to be "fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351[ ] (1974). "[T]here is no specific formula for defining state action" under this standard. *Hicks v. Southern Maryland Health Sys. Agency*, 737

F.2d 399, 402 n. 3 (4th Cir. 1984) (quoting *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983)). Rather, the question of what is fairly attributable to the State "is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Academy*, 531 U.S. at 295[.]

In ECF 8, ¶ 21, plaintiff alleges, *id.*:

> Andrew Maggio and other employees with The Dunbar Security Company, who has repeatedly threatened to shoot me 'at will' and therefore violated my rights as an individual who is engaged in protected activity and covered under the ADA. Some of them stood by the door with instructions to shoot me 'at will' during what were supposed to be 'flexible integrative dialogues' with Suzanne T. Berger.

The Amended Complaint avers that the meetings where plaintiff was threatened took place on November 24, 2015, December 4, 2015, and December 14, 2015. *Id.* ¶ 12. Williams asserts, *id.* ¶ 48:

> At approximately 12:45 p.m. on November 24, 2015; I noticed a black male Dunbar Security Guard carrying a loaded weapon up to the 2nd floor of the OHR building. He stood by the door during the entire meeting with strict instructions from Fred Homan, the County Administrative Officer; to kill the plaintiff 'at will' if the plaintiff became hostile, aggressive or if the plaintiff appeared to be under the influence of any illegal narcotics such as cocaine or marijuana.

Further, Williams alleges, with reference to a meeting on an unspecified date, *id.* ¶ 51:

> During 2nd meeting, that was not flexible or interactive considering an armed guard was standing by the door with his gun drawn and specific instructions from Fred Homan to kill me 'at will' & Suzanne Berger had a loaded weapon under the table, the defendant demanded that I waive all rights afforded to me under the ADA in order to the Department of Public Works. Suzanne Berger also admitted during the meeting that she showed that form to the County Attorney's Office for their approval. Please note that this transfer was in the same building that I was told that I wouldn't be working in anymore and my card. . .no longer had access into the County buildings.

The Amended Complaint asserts that Maggio is associated with Dunbar (ECF 8, ¶ 21), not the State of Maryland or any of its political subdivisions. Moreover, the Amended Complaint contains no facts sufficient to show that Maggio's alleged conduct is "fairly attributable" to the State, so as to trigger potential liability under § 1983, as a state actor.

Therefore, Williams has not adequately alleged that Maggio was acting under color of state law for the purposes of § 1983. On this basis, Maggio is entitled to dismissal of the suit as to him.

## 2.

Alternatively, Maggio seeks summary judgment. *See* ECF 38. With his summary judgment motion, Maggio has submitted two exhibits that establish that he did not work for Dunbar in November or December 2015, when plaintiff alleges he was threatened. ECF 38-2, ¶ 6; ECF 38-3, ¶ 5. And, when Maggio did join Dunbar, he has established that he did not work as a security guard. ECF 38-2, ¶ 4; ECF 38-3, ¶ 3, 4.

Maggio joined Dunbar on January 4, 2016, as Vice President of Physical Security Solutions, and not as a security guard. ECF 38-2, ¶ 4, 6; ECF 38-3, ¶ 5. As noted, the alleged incidents concerning the Dunbar guards occurred in November and December of 2015. ECF 8, ¶ 12. Therefore, Maggio could not be culpable for those events, as he did not yet work for Dunbar.

Moreover, in ¶ 48 of the Amended Complaint, Williams claims he was threatened by a black male on November 24, 2015. But, Maggio avers that he is Caucasian. ECF 38-2, ¶ 7; ECF 38-3, ¶ 6.

The facts set forth by Maggio are not contested in Williams's Motion to Strike. As such, there is no dispute of material fact surrounding them.

In his Motion to Strike, Williams attempts to expand his Amended Complaint by alleging that Maggio is responsible for employees of Dunbar who violated plaintiff's civil rights, not just at the meetings with Berger, "but also on dates [from] August 30, 2016 through the present." ECF 44 at 1. However, plaintiff cannot expand his suit by way of a motion to strike. *See, e.g.*, *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (noting that a complaint

may not be amended by briefs in opposition to a dispositive motion) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)).  He cannot use a motion to strike to establish a claim against Maggio as the supervisor of security guards whose conduct he challenges.

Accordingly, Maggio is entitled to summary judgment.  And, I shall deny Williams's Motion to Strike.

### B.  Motion for Protective Order

Williams seeks an Order from this Court to prevent defendants from using a deposition allegedly taken on November 29, 2017, before this litigation was filed, and from taking plaintiff's deposition anew in this litigation.  ECF 11.  In support of these requests, plaintiff invokes Fed. R. Civ. P. 32(a)(5)(B) and Fed. R. Civ. P. 26(c)(1).  *Id.* at 1.

Rule 32(a)(5)(B) states:

*Unavailable Deponent; Party Could Not Obtain an Attorney.* A deposition taken without leave of court under the unavailability provision of Rule 30(a)(2)(A)(iii) must not be used against a party who shows that, when served with the notice, it could not, despite diligent efforts, obtain an attorney to represent it at the deposition.

Rule 30(a)(2)(A)(iii) states that a party must seek leave of court in order "to take the deposition before the time specified in Rule 26(d), unless the party certifies in the notice, with supporting facts, that the deponent is expected to leave the United States and be unavailable for examination in this country after that time[.]"

Rule 26(c)(1) pertains to protective orders generally and states:

*In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(F) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(G) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Plaintiff seeks to prevent defendants from using deposition testimony allegedly taken nearly a year before this lawsuit was filed. He also seeks to prevent defendants from taking a new deposition in a lawsuit he initiated. It is not clear whether plaintiff had counsel in 2017. And, he has not provided any information that this Court might use to assess whether there is good cause to prevent the defendants from taking his deposition in this case.

However, plaintiff cannot initiate litigation and then shirk his responsibility to participate in discovery. And, in general, the Federal Rules of Evidence permit use of prior, relevant admissions of a party-opponent. *See* Fed. R. Evid. 801(d)(2).

"'The purpose of pre-trial discovery is for a litigating attorney to obtain information from the opposing party, information which in many cases is not otherwise available.'" *Adams v. Md. Mgmt. Co.*, WDQ–11–2408, 2013 WL 142074, at *2 (D. Md. Jan. 10, 2013) (citation omitted). Defendants cannot be expected to litigate this case without being able to obtain discovery. And, plaintiff has not certified that he has conferred with defendants to resolve any issues that might exist concerning the taking of his deposition, as required by Rule 26(c)(1).

Accordingly, I shall deny the Motion for Protective Order as premature, and without prejudice to the right to renew it.

## C. Motion to Modify Scheduling Order

On March 1, 2019, this Court entered a Scheduling Order. ECF 10. In it, I set a discovery deadline of July 15, 2019, and a deadline of August 13, 2019, for filing summary judgment motions. *Id.* at 3-4. The deadline to request changes to the Order expired on March 18, 2019. *Id.* at 2.

On March 12, 2019, Williams timely filed a motion pursuant to Rule 16(b)(4) to modify the Scheduling Order. ECF 12. He asked the Court to shorten the discovery period to close on April 19, 2019, and for motions for summary judgment to be due on May 20, 2019. *Id.* at 1.

Scheduling orders serve a vital purpose in helping a court manage its civil caseload. *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985); *see also Naughton v. Bankier*, 14 Md. App. 641, 653, 691 A.2d 712, 718 (1997) (recognizing that a scheduling order helps "to maximize judicial efficiency and minimize judicial inefficiency"). "In an era of burgeoning case loads and [crowded] dockets, effective case management has become an essential tool for handling civil litigation." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) (alteration added). To that end, a scheduling order is an important vehicle in "'securing the just, speedy, and inexpensive determination of every action.'" *Miller v. Transcend Services, Inc.*, 10 CV 362, 2013 WL 1632335, at *4 (M.D.N.C. Apr. 16, 2013) (citation omitted).

Fed. R. Civ. P. 16 concerns scheduling and case management. The Rule "recognize[s] ... that the parties will occasionally be unable to meet ... deadlines [in a scheduling order] because scheduling order deadlines are established relatively early in the litigation." *O'Connell v. Hyatt*

*Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004). Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent."

The deadlines have now passed. Therefore, the Motion to Amend the Scheduling Order shall be denied, as moot.

### D. Motion to Strike ECF 18

On March 21, 2019, Williams filed the Motion to Join DHS, docketed at ECF 18. The following day, he filed the Motion to Strike ECF 18, informing the Court that he had mistakenly filed ECF 18 in this case, when he had intended to file it in the case pending at that time before Judge Bennett, *Williams v. Hanlon et al.*, RDB-19-550. *See* ECF 19. The docket in that case reflects that Williams filed a motion to join the Maryland Department of Human services, and others, on March 22, 2019. ECF 11.

Accordingly, I shall grant the Motion to Strike ECF 18.

### E. Motion to Compel

On April 22, 2019, Williams filed the Motion to Compel. ECF 23. He contends that defendants have "not answered Plaintiff's discovery requests" or engaged in possible settlement negotiations. *Id.* at 1. Because of this, he seeks an Order from this Court compelling defendants to produce discovery. *Id.* at 1-2.

Rule 37(a) of the Federal Rules of Civil Procedure "authorizes the basic motion for enforcing discovery obligations." Charles Alan Wright, et al., 8B Fed. Prac. & Proc. Civ. § 2285 (3d ed. 1998). The moving party must certify in the motion that he has conferred, or attempted to confer, in good faith with opposing counsel in an effort to obtain the desired material, without court involvement. Fed. R. Civ. P. 37(a)(1). District courts enjoy substantial discretion in

managing discovery, including granting or denying motions to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir.1995).

Plaintiff's Motion to Compel does not contain any information as to what documents or information he requested from defendants, or any dates on which he requested such information. He merely makes blanket assertions that defendants have failed to respond to his discovery request. As such, his motion does not establish grounds for relief.

Accordingly, I shall deny the Motion to Compel, without prejudice.

### F.  Motions for Joinder

Pursuant to Fed. R. Civ. P. 20(a)(2), Williams filed for the permissive joinder of Dunbar in its "'individual and/or his 'official' capacity." ECF 26 at 1.  Maggio responded in opposition. ECF 32.  Maggio argues that Williams makes no argument in his motion that Dunbar is jointly and severally liable for any of his claims.  ECF 32-1 at 3.  Maggio also argues that Williams has not cited any facts or made any argument "that any right to relief Plaintiff may have against Dunbar arises out of the same transaction or occurrence as his claims against the other Defendants."  *Id.*

Plaintiff filed three more motions for joinder, one to join Terrence Sheridan (ECF 8-2), one to join the "united states of amerikka" (ECF 52) and one to join Julie Guilbault (ECF 56).

Williams filed the Motion to Join Sheridan when he amended his Complaint.  ECF 8.  His Amended Complaint contains allegations as to Sheridan.  The Court did not rule on this motion, but I note that it is not uncommon for an amended suit to add a defendant within a reasonable time. Because the Amended Complaint contains allegations as to Sheridan, and because no opposition was filed, I shall grant the Motion to Join Sheridan.

Williams contends that the "united states of amerikka" includes, but is not limited to, the "judicial council for the fourth circuit & the u.s. court of appeals for the fourth circuit;" "the u.s.

district court of md, the u.s. marshall service md & pretrial services Maryland northern branch & southern branch;" "the federal public defender's office;" "the baltimore county police department;" chesapeake detention facility;" and "the u.s. magistrate judge selection panel." ECF 52 at 2 n.1. Williams contends that the United States Department of Justice violated his rights by ignoring complaints he filed regarding defendants in this case. *Id.* He also claims the federal government is responsible for his eviction. *Id.* at 3. Plaintiff also asserts that he was detained for "45-days" and then released with an ankle monitor for 61 days, for which he seeks to hold the government liable. *Id.*[8] He appended to this motion 180 pages of filings from other litigation in which he is or was involved. *See* ECF 52-1.

In his Amended Motion to Join Guilbault (ECF 56), Williams alleges that Guilbault is the Deputy Director of Human Resources for Baltimore County. ECF 56 at 1. After Guilbault "informed the Plaintiff on the afternoon of November 24, 2015 that she works in 'records,' Williams concluded that she was in the room during his meetings with Berger to train her in terminating the employment of African Americans engaging in protected activity." *Id.* at 2. He alleges she "had both of her hands underneath the table in case she needed to grab the loaded gun that was underneath the table." *Id.* He attached numerous exhibits relating to communications he sent to Chief Judge Bredar in another lawsuit. ECF 56-2.

Federal Rule of Civil Procedure 20 permits a plaintiff to join parties in a single action if (1) a right to relief is asserted against the defendants with respect to the same transaction, occurrence, or series of transactions or occurrences; and (2) a common question of law or fact will arise in the action. Fed. R. Civ. P. 20(a)(2). Although the transaction or occurrence test of Rule 20

---

[8] Plaintiff appears to contend that he was required to wear the ankle monitor sometime around July or August 2018. ECF 52 at 3. This coincides with his pretrial release in regard to the contempt case assigned to Judge Chuang. ECF 42 at 2.

permits all "reasonably related claims ... to be tried in a single proceeding," *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Moseley v. Gen. Motors Corp.*, 497 F.2d 1300, 1333 (8th Cir. 1974) ), "[m]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder," *Raw Films, Ltd. v. Does 1–32*, No. 3:11-cv-532, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011) (quoting *Laface Records, LLC v. Does 1–38*, No. 5:07-cv-298, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008)). Rule 20 grants courts "wide discretion concerning the permissive joinder of parties," and if joinder will result in prejudice, expense, or delay, the court has discretion to deny joinder. *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007).

I decline to allow joinder of Dunbar, a private security company, given that the case centers on claims of employment discrimination and Williams never worked for Dunbar. Plaintiff has pleaded no facts that make it plausible that Dunbar's conduct is "fairly attributable" to the State in its decisions about his employment, or that the nexus between Dunbar and the State of Maryland is sufficiently close so as to trigger liability on the part of Dunbar. Accordingly, I shall deny the Motion to Join Dunbar. ECF 26.

As noted, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). "[T]he actions and conduct of federal agencies, officers and employees are not actionable under Section 1983." *Lee v. Director, Federal Bureau of Prisons*, 5:06-cv-00452, 2009 WL 2060116, at *2 (S.D. W.Va. July 8, 2009) (citing *Gomez v. Toldeo*, 446 U.S. 635, 640 (1980)). In his Motion to Join Amerikka, plaintiff improperly seeks to include multiple federal agencies in his definition of "united states of amerikka." He also seeks to add what appear to be State or local agencies, including the Baltimore County Police Department and "Chesapeake Detention." ECF

52 at 2 n.1. But, he has stated no facts in his Amended Complaint that would indicate that these two entities participated in the events at issue. Therefore, there is no common occurrence or transaction, and no common question of law or fact with which to justify joinder. Accordingly, I shall deny the Motion to Join Amerikka.

Plaintiff alleges that Guilbault participated in a meeting with Berger that he describes in his Amended Complaint. But, he has not alleged any facts to show that Guilbault was responsible for any discriminatory action taken against him. Williams alleges only that Guilbault participated in a meeting, and that her hands were under the table during the meeting. These allegations do not give rise to liability under § 1983 or for discrimination in employment. Therefore, I shall deny the Motion to Join Guilbault.

### G. Rule 8(a) Motion

Plaintiff filed a motion "in accordance with Rules 8(a)(1), 8(a)(2) & 8(a)(3) of the Federal Rules of Civil Procedure," asking this Court to issue an Order requiring "the Baltimore County Office of Budget and Finance" to send plaintiff a "biweekly check. . . of no less than $2,600 gross pay and no more than [$]3,400 gross pay beginning on May 24, 2019." ECF 34 at 1.

Fed. R. Civ. P. 8(a) provides:

(a) *Claim for Relief*. A pleading that states a claim for relief must contain:
(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

This rule sets out the standards for pleading; it does not authorize demands the payment of damages prior to a judgment.

Accordingly, I shall deny the Rule 8(a) Motion.

## H. Motion to Withdraw

On September 5, 2019, the defendants, with the exception of Maggio, filed a consent motion to expedite a settlement conference with Williams. ECF 45. On September 9, 2015, defendants filed the Motion to Withdraw, stating that they "no longer [held] out even the slightest of hope that the Plaintiff and the County defendants" could reach a settlement. ECF 46 at 1. The Court does not compel parties to negotiate, although such conduct is encouraged. I shall grant this motion.

## I. Motion for Sanctions

On September 10, 2019, Williams filed the Motion for Sanctions. ECF 48. He seeks sanctions to be imposed on the defendants "for no less than $1,387 x ($3 x 10^6), to increase by ($3 x 10^6) for everyday this continues." *Id.* at 1. He claims that defense counsel, Michael Raimondi, has become "intimidating and threatening." *Id.* As evidence of this assertion, Williams submitted emails from Raimondi allegedly demanding that Williams "drop all complaints against his clients in their 'individual' capacity without offering anything in return for such a huge demand." *Id.* He objected to Raimondi referring to his demand for a joint press conference as "mean spirited." *Id.* at 3.

Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 authorize a district court to impose sanctions. Rule 11 permits imposition of sanctions if, *inter alia*, a party presents a pleading to the Court "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b) (1); *see id.* 11(c). Section 1927 permits imposition of sanctions if an attorney "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

Sanctions are not appropriate here under Fed. R. Civ. P. 11 because the Motion for Sanctions is not in response to a pleading before this court. Rather, Williams seeks sanctions against Raimondi for email negotiations between the two regarding settlement. Nor will I impose sanctions under 28 U.S.C. § 1927, because its substantive requirements have not been satisfied. "The unambiguous text of § 1927 aims only at attorneys who multiply proceedings." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir.1999) (emphasis in original). It does not relate to the merits of a claim or the equities of a dispute, but rather it is "concerned only with limiting the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980).

Raimondi, as counsel of record for defendants, has filed only an answer to plaintiff's Complaint (ECF 9), a consent motion to expedite a mediation/settlement conference (ECF 45), and a motion to withdraw this consent motion (ECF 46). This does not constitute abuse of court processes. Accordingly, I shall deny the Motion for Sanctions.

### J. Rule 64 Motion

Williams filed a motion pursuant to Rule 64 of the Federal Rules of Civil Procedure on October 17, 2019, requesting that this Court issue an order seizing "defendants' property, public and private." ECF 54 at 1. Williams's Rule 64 Motion contains a litany of complaints about defendants and Chief Judge Bredar.

Fed R. Civ. P. 64 provides: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Pursuant to this rule, this Court should apply Maryland law here when considering remedies for the purpose of securing satisfaction of a judgment.

The relevant Maryland statute governing attachment before judgment is Md. Code (2013 Repl. Vol.), Cts. & Jud. Proc. Art., § 3–303, which provides a specific list of situations in which an attachment before judgment may issue. Those circumstances include a non-resident debtor, § 3–303(b); a debtor who has acted to evade service, § 3–303(c); a debtor who has absconded from the state, § 3–303(d); a debtor who has taken steps to defraud creditors by assigning, concealing, or removing property, § 3–303(e); and other specific situations. These are inapplicable to this case. Therefore, I will deny the Rule 64 Motion.

## IV.    Conclusion

For the aforementioned reasons, I shall deny plaintiff's motions, docketed at ECF 11; ECF 12; ECF 23; ECF 26; ECF 34; ECF 44; ECF 48; ECF 52; ECF 54; ECF 55; ECF 56. I shall grant plaintiff's motions docketed at ECF 8-2 and ECF 19. I shall grant the Motion to Withdraw, docketed at ECF 46. And, I shall grant Maggio's Motion to Dismiss (ECF 20) and his Motion for Summary Judgment (ECF 38).

An Order follows.


Date: February 13, 2020                                   _____/s/_____

                                                          Ellen L. Hollander
                                                          United States District Judge